**2010 BNH 030**

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                    Bk. No. 10-13115-MWV
                                                                          Chapter 7
Donna L Carlucci and
Kenneth P. Carlucci,

                    Debtors

*Mary F. Stewart, Esq.*
*MARY STEWART LAW, PLLC,*
*Attorney for Debtors*

*Timothy E. Britain, Esq.*
*CLEVELAND, WATERS AND BASS, P.A.*
*Attorney for Brian and Sandra Bilodeau*

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on a motion to avoid lien (the "motion") (Ct. Doc. No. 47) filed by Donna L Carlucci and Kenneth P. Carlucci (the "Debtors") and objection thereto filed by Brian Bilodeau and Sandra Bilodeau (the "Bilodeaus"). The Debtors seek to avoid a judicial lien held by the Bilodeaus pursuant to 11 U.S.C. § 522(f) of the Bankruptcy Code.[1] The Court held hearings on September 15 and September 23, 2010, and took the matter under advisement.

### <u>JURISDICTION</u>

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

_____

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

## BACKGROUND

On September 28, 2004, the Bilodeaus obtained a writ of attachment against Donna L. Carlucci and recorded it in the Carroll County Registry of Deeds.  Subsequently, on April 6, 2009, the Bilodeaus received a final judgment for total damages in the amount of $209,886.59 against Donna L. Carlucci.  On May 12, 2009, and April 16, 2010, the Bilodeaus obtained and recorded a Writ of Execution and an Alias Writ of Execution, respectively.  Both documents state that the amount of the judgment against Donna L. Carlucci is $209,886.59.  On July 20, 2010, the Debtors filed for Chapter 7 bankruptcy protection.  The Debtors now seek to avoid the Bilodeaus' lien in part pursuant to 11 U.S.C. § 522(f).  The Bilodeaus contest the following in the Debtors' motion: (1) the fair market value of the Debtors' property, (2) the amount of the Bilodeaus judicial lien, and (3) the ability of the Debtors' to include the statutory lien obtained by the Town of Sandwich on April 15, 2010, in the Debtors' 11 U.S.C. § 522(f) calculation. The Bilodeaus also request the Court to order the Debtors to compensate the Bilodeaus' appraiser for his time in appearing on September 15, 2010, since the hearing was continued at the fault of the Debtors.

The Court held a hearing on the matter on September 15, 2010 at which time the Bilodeaus appraiser appeared to testify as to his valuation of the Debtors' property.  However, the Debtors were not ready to proceed, and the Court continued the hearing until September 23, 2010.  At the continued hearing, the Court heard testimony from both the Debtors' and Bilodeaus' appraiser regarding the fair market value of the property.

## DISCUSSION

### I.    Fair Market Value of the Debtors' Property

The equalized assessed tax value of the Debtors' property provides a valuation of $237,800 (Ct. Doc. No. 14).  Kevin Fritschy, the Debtors' appraiser, testified that based on his physical analysis, analysis of the location, and economic analysis, he believed the Debtors' property to have a value of $171,000 (Ex. 101).  On the other hand, Brian Underwood, the Bilodeaus' appraiser, conducted his own analysis and determined the Debtors' property to have a value of $210,000 (Ex. 3).  Having heard ample

-2-

testimony and being provided with extensive exhibits as to valuation, the Court is inclined to lend more weight to the appraisal of Mr. Underwood with a few adjustments.

Mr. Fritschy's appraisal adjusted comparable sales prices downward based on the date the comparable sales took place (Ex. 112). Mr. Fritschy explained this adjustment as a way to account for the downturn in the housing market. Mr. Underwood did not adjust either positively or negatively for the date of sale (Ex. 3). Mr. Underwood testified that he believed the housing market to be in a stable condition and that it has been so since early 2009. The Court agrees with Mr. Underwood that the housing market is more stable at present and does not believe the value of the Debtors' property should be affected for such condition.

Mr. Fritschy's appraisal is also well under the tax assessed value of the Debtors' property. Mr. Fritschy testified that the tax assessment should be given little weight, because several other factors needed to be taken into account when determining value. While it is true that tax assessments may not be one-hundred percent accurate, this Court believes that they provide a very reliable estimate as to the value of certain property. Mr. Underwood's appraisal seems to have taken into account the other factors that would adjust the value of the tax assessment and provide a more accurate value of the Debtors' property.

Both appraisals used the property located at 238 Whittier Highway, Sandwich, NH (the "Whittier property"), as a comparable sale. There is a considerable difference, approximately $22,000, between Mr. Fritschy's valuation and Mr. Underwood's valuation of the Whittier property. Mr. Underwood made considerable positive adjustments to the value of the Whittier property based on the location and view of the Debtors' property. On the other hand, Mr. Fritschy made no adjustments either positively or negatively for location and view. The Court believes the adjustments as made by Mr. Underwood are necessary since the Whittier property is both located on a highway and has no view. Because the Debtors' property is located away from the highway and has an actual view, the Debtors' property should be valued higher than the Whittier property.

Although the Court finds that Mr. Underwood's appraisal is a better indicator of valuation, adjustments do need to be made.  Kenneth P. Carlucci testified that the current roof is leaking and will require a replacement.  Further, Mr. Carlucci stated that the septic system also needs repairs.  Mr. Carlucci, however, did not provide an estimated cost necessary to remedy these conditions.  Mr. Fritschy also testified that Debtors' property did not have permanent flooring, and the bath did not work.   Mr. Underwood's appraisal did not list any physical deficiencies to the property (Ex. 3).  A downward adjustment in valuation is appropriate due to the unavoidable costs associated with replacement of the roof, repairs, and other construction necessary on the Debtors' property.  Accordingly, the Court believes the proper valuation for the Debtors' property should total $200,000.

## II.      The Proper Amount of the Bilodeaus Judicial Lien

On September 19, 2004, the Carroll County Superior Court granted the Bilodeaus a prejudgment attachment in the amount of $175,000 in the Debtors' property.  The Debtors contend that this is the amount of the Bilodeaus' judicial lien.  The Bilodeaus argue that their recorded Writ of Execution and Alias Writ of Execution state the amount of their final judgment as $209,886.59, and that this is the correct amount of their judicial lien.  The Court finds that the judicial lien is created through the filing of the Writ of Execution.  As such, the judicial lien must consort with the amount that is actually recorded, and that amount is $209,886.59.

## III.     The Statutory Lien of the Town of Sandwich for 2010 Property Taxes

In performing the lien avoidance calculation under 11 U.S.C. § 522(f), the Debtors include $2,144 for property taxes owed in 2010.  This amount is an estimate of the assessment since the Town of Sandwich does not actually conduct its assessment until December of this year.  The Bilodeaus argue that the Debtors have not been billed yet for their 2010 taxes, and thus cannot include that in their § 522(f) calculation.  The Debtors counter that the 2010 property taxes should be included in their calculation, because the statutory lien held by the Town of Sandwich for property taxes arises in April of the tax year.

New Hampshire law provides that "[i]n April of each year, a lien arises by force of law to secure the payment of property taxes for that year . . . ." First NH Bank v. Town of Windham, 639 A.2d 1089, 1091 (N.H. 1994); N.H. Rev. Stat. Ann. § 72:6; N.H. Rev. Stat. Ann. § 80:19.  While it is true that a lien was created in April 2010 in favor of the Town of Sandwich for property taxes, that lien is inchoate and merely serves as to notice that the Town has a right to perfect that lien.  The lien, however, does not become choate for purpose of § 522(f) until the amount is established.  In this case, that will not occur until December 2010 when the Town of Sandwich conducts a property assessment.  Accordingly, the Debtors cannot include in their lien avoidance calculation the statutory lien of the Town of Sandwich for 2010 property taxes.

### IV.     The Debtors' Motion to Avoid Lien pursuant to 11 U.S.C. § 522(f)

Pursuant to 11 U.S.C. § 552(f), "a lien shall be considered to impair an exemption to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens."  11 U.S.C. § 522(f)(2)(A).  The Debtors' property is subject to the following mortgages, judicial liens and/or non-possessory, non-purchase-money security interests:

1.   Statutory Lien obtained by the Town of Sandwich on April 28, 2009, in the amount of $3,050.20.

2.   Statutory Lien obtained by the Town of Sandwich on May 5, 2010, in the amount of $2,448.38.

3.   Judicial Lien obtained by the Bilodeaus recorded on April 16, 2010, in the amount of $209,886.59.

The Debtors are entitled to an exemption in the property in the amount of $100,000 pursuant to N.H. Rev.

Stat. Ann. § 480:1[2] and $8,000 pursuant to N.H. Rev. Stat. Ann. § 511:2(XVIII).  The Debtors' property

has a fair market value of $200,000.  Following the formula set forth above:

1. The lien being tested for avoidance $209,886.59, added with all other liens $5,498.58 and the

    maximum exemption allowable in the absence of liens $107,813.74 provides a sum of

    $323,198.91.

2. From the sum above, $323,198.91, subtracting the value of the property in the absence of

    liens, $200,000, the Court finds that the extent of the impairment is $123,198.91.

Since the extent of the impairment is less than the entire value of the Bilodeaus' lien, the lien can only be

avoided to the extent of the impairment, preserving the Bilodeaus' lien in the amount of $86,687.68.

###### V.      Compensation for Mr. Underwood's Appearance at the September 15, 2010 Hearing

The Bilodeaus request this Court to award them fees for Mr. Underwood's time in preparing for

and attending the hearing on September 15, 2010, since Mr. Underwood was required to return on

September 23, 2010, as a result of the Debtors' lack of preparedness.  The Bilodeaus request

compensation for Mr. Underwood in the amount of $900 (Ct. Doc. No. 62).  While the Court agrees that

Mr. Underwood should be compensated by the Debtors, $900 is unreasonable.  Under the Court's broad

powers pursuant to 11 U.S.C. § 105, the Court finds that the Debtors are required to pay the Bilodeaus the

amount of $500 for Mr. Underwood's unnecessary appearance at the September 15, 2010, hearing.

###### CONCLUSION

For the reasons set out herein, the Court grants the Debtors' motion to avoid lien in the amount of

$123,198.91, but preserves the Bilodeaus' judicial lien in the amount of $86,687.68.  In addition, the

Bilodeaus are awarded fees for Mr. Underwood's unnecessary appearance at the September 15, 2010,

hearing in the amount of $500.  This opinion constitutes the Court's findings and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order

---

[2]The Court previously denied Mr. Carlucci's right to use his homestead exemption, because the Biloudeaus' lien fixed on the Debtors' property before Mr. Carlucci acquired an ownership interest in the property.

consistent with this opinion.

DATED this 28th day of September 2010, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge